Randell Ray **TAYLOR**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 46129.

Court of Criminal Appeals of Texas.

Feb. 27, 1974.

Dunnam & Dunnam, Port Lavaca, for appellant.

Wiley L. Cheatham, Dist. Atty., Cuero, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ROBERTS, Judge.

This is an appeal from a conviction for the offense of possession of marihuana. The jury assessed punishment at two years' confinement.

Initially, appellant challenges the sufficiency of the evidence. He contends that the evidence is insufficient to prove that he had knowledge, or the actual control, care, and management, of marihuana seeds found scattered on the carpet of his Toyota. He further alleges that the arrest and search were illegal.

The record shows that Sheriff's Deputy Raymond May, acting on information that a marihuana party was being held at Swan's Point, secreted himself in the trunk of a car driven by Mrs. Iris Coffee and Norman Boyd. By keeping the trunk partially opened, Deputy May, upon their arrival at Swan's Point, was able to smell marihuana smoke. The automobile left the scene. After they were out of sight of those at the party, the car was stopped and Deputy May got out of the trunk. He left Norman Boyd hidden in some bushes to observe the entrance and exit of cars from the party while he went to get help. Deputy May returned with Constable Jack Campbell and was met by Sheriff Homer Roberson. There is some conflict in the testimony as to the events which subsequently took place. May and Campbell both testified that appellant was seated behind the steering wheel of his white Toyota automobile. As the officers approached the vehicle, they observed several beer cans strewn about the immediate vicinity of the vehicle. A check of the cans showed them to be still cold and several of them half full of beer. Knowing that the boys were under the legal drinking age, the officers requested the boys to get out of the car.

The arresting officer testified that as he approached he observed the appellant and "three more" in the car. All the occupants of the car got out; the officers then "started looking." One officer stated that as he was standing beside the automobile, on the passenger's side where the door was open, he observed, with the aid of a flashlight, *one* "little bitty okra-type seed" on the carpet of the automobile. A thorough search of the interior of the vehicle was begun at this time—a total of nine seeds, later identified as being marihuana seeds, was ultimately discovered, scattered throughout the automobile. The officer testified that the total of nine seeds was obtained only after pulling up the carpet in various places,[1] and that two seeds were found on the driver's side, at least one was found on the passenger's side, and seeds were further found on both sides in the back seat area of the car.

The search also revealed a pipe in the glove compartment, which contained a residue that the arresting officer said "appeared to be marihuana."

We do not reach the question of the legality of the search, as we find the evidence insufficient to support the verdict. As was stated in the case of Pelham v. State, 164 Tex.Cr.R. 226, 298 S.W.2d 171 (1957), Texas' former law which dealt with marihuana, Art. 725b, Vernon's Ann. P.C., did not prescribe or limit the amount of marihuana necessary to be possessed in order to constitute the unlawful act of possession of marihuana.

"We know that the use commonly made of marihuana is to smoke it in cigarettes; it is not taken internally or by hypodermic, as are other narcotics. Such being true, we have concluded that the reasonable construction and interpretation to be applied here is that the legislature intended that to constitute the unlawful act of possessing marihuana there must be possessed an amount sufficient to be applied to the use commonly made thereof. In other words, unless the amount of marihuana possessed is such as is capable of being applied to the use commonly made thereof, it does not constitute marihuana within the meaning of the statute." Pelham v. State, supra.

In Johnson v. State, 165 Tex.Cr.R. 158, 305 S.W.2d 361 (1957), after chemical analysis of the contents of a bottle found in the *personal possession* of the accused, there remained approximately one-half of its contents, or "at least a half a grain" of marihuana or "something slightly less than required to make a cigarette." This Court found the evidence sufficient to support the conviction. In Tuttle v. State, 410 S.W.2d 780 (Tex.Cr.App.1966), a plastic box was found in the defendant's apartment. The box contained 63 milligrams of marihuana, which an expert witness stated was enough to make a very small cigarette. The conviction was affirmed. The Tuttle case, supra, was cited as authority in the case of Buntion v. State, 476 S.W.2d 317 (Tex.Cr.App.1972). That conviction was upheld in light of evidence that *cigarette stubs,* recovered from the accused's automobile, contained about one-tenth of a gram of marihuana.[2]

In Mitchell v. State, 482 S.W.2d 223 (Tex.Cr.App.1972), the conviction was upheld on appeal after a matchbox was recovered from the accused's pocket, and the

[1]. The officer stated that of the nine seeds, four or five were recovered from beneath the carpet of the vehicle.

[2]. In Rainey v. State, 464 S.W.2d 865 (Tex. Cr.App.1971), the defendant challenged the conviction and argued on appeal that the amount of marihuana shown was not sufficient to support the conviction for the sale of marihuana. An undercover agent had testified that she purchased a cigarette from the accused, pretended to smoke it, and at the first opportunity extinguished it and turned it over to an officer. The unconsumed portion of the cigarette contained 2/100 of a gram of marihuana. In affirming the conviction, this Court pointed out that the sale of a *whole cigarette* was proven, and that the weight quoted was only that portion which remained after the smoking of part of the cigarette.

matchbox was over one-half full of mari- huana. The record was unclear as to whether a chemist testified relating to .74 gram or .0074 gram of marihuana; the Court held it sufficient in any event, in light of the matchbox and its contents re- covered from the personal possession of the defendant. See also, Williams v. State, 476 S.W.2d 300 (Tex.Cr.App.1971).

The confusion surrounding the law on what amount of a narcotic drug is neces- sary to sustain a conviction was clarified in Reyes v. State, 480 S.W.2d 373 (Tex. Cr.App.1972). Judge Odom pointed out that the reasoning of the Pelham case, su- pra (i. e., that the amount of the drug pos- sessed must be such as is capable of being applied to the use commonly made thereof) does not apply where it is clear that the accused *knowingly* possessed the drug in question. For example, where a *sale* of a narcotic drug is involved, and the accused has represented that he is selling a certain narcotic drug and the substance which he sells is found to contain such narcotic drug, knowledge has been shown, and the quantity of the drug found is irrelevant. Carter v. State, 480 S.W.2d 735 (Tex.Cr. App.1972); Bryant v. State, 492 S.W.2d 947 (Tex.Cr.App.1973).

Such is not the situation in the case at hand. A chemist testified that an analysis of the nine seeds showed their total weight to be .19 gram or 655 one-hundred thou- sandths of an ounce.[3] He stated that, while the average weight of marihuana contained in an ordinary cigarette was about .25 gram, it was possible to use the .19 gram, either to plant or to smoke. Such a theory, of course, is based on the as- sumption that the appellant exercised care, custody, control, or management over all nine seeds which were found scattered about in at least four different locations on and under the carpet in the vehicle. There were at least three other people occupying the vehicle at the time the officers arrived and an estimated fifteen to twenty people "at the scene" immediately preceding the arrest.

■ Certainly, it is not unreasonable to assume that marihuana had been possessed at some earlier point in time by a person or persons occupying that automobile. But the affirmative links are not substantial enough to justify a conclusion that, be- cause of this prior conduct, the appellant is guilty, beyond a reasonable doubt, of pos- sessing marihuana, where the entire amount of the narcotic drug involved, nine seeds, must be totalled and attributed to the appellant before an amount which could conceivably be smoked is achieved. This is not intended as a weakening of those cases cited where personal possession of a very small amount of a narcotic drug was involved. However, no such personal possession was demonstrated in the present cause, and the record does not support a conclusion that the appellant knowingly possessed the nine seeds.

■ As for the pipe found in the glove compartment, the chemist testified that the residue contained a "trace of marihuana," but that it was too little to be weighable or usable. Such evidence will not support the conviction. As stated in Pelham v. State, supra, it ". . . would be a harsh rule, indeed, that would charge appellant with knowingly possessing that which it re- quired a microscope to identify."

The judgment is reversed and the cause remanded.

DOUGLAS, Judge (dissenting).

I dissent from the reversal of the con- viction because of the insufficiency of the evidence. See Denny and Forfar v. State, Tex.Cr.App., 473 S.W.2d 503, original opinion, and the dissent in Williams v. State, Tex.Cr.App., 498 S.W.2d 340.

---

3. In this case, the trial judge did instruct the jury that in order to constitute the unlawful possession of marihuana, there must "be possessed an amount sufficient to be applied to the use commonly made thereof and it must be capable of being applied to that use."

The appellant has filed a motion to abate the appeal. I would grant the motion and abate the appeal so that appellant might be resentenced under the Texas Controlled Substances Act, Article 6.01(c), V.A.P.C., for the reasons set out in the dissenting opinions in Ex parte Giles, Tex.Cr.App., 502 S.W.2d 774, and Dullnig v. State, 504 S.W.2d 495 (1974).